IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHARITY F. WITT,

        Plaintiff,

  vs.                              Civil Action 2:11-CV-347
                                      Judge Smith
                                      Magistrate Judge King

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION

### I.
### Introduction and Background

This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits.[1] This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 15, the Commissioner's *Memorandum in Support*, Doc. No. 20, and plaintiff's *Reply Memorandum*, Doc. No. 21.

Plaintiff Charity F. Will filed her application for benefits on February 20, 2007, alleging that she has been disabled since December 20, 2005, as a result of arthritis in both ankles, back, feet and left knee. *PageID* 201, 206. Plaintiff also claims disability due to mood swings and emotional problems. *PageID* 209. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

---

[1] Plaintiff initially filed applications for both disability insurance benefits and supplement security income but, as of November 6, 2007, plaintiff withdrew the supplemental security income portion of her application. *PageID* 247, 252.

A hearing was held on October 6, 2009, at which plaintiff, represented by counsel, appeared and testified, as did Jerry A. Olsheski, Ph.D., who testified as a vocational expert. In a decision dated January 28, 2010, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act at any time prior to the lapse of her insured status on March 31, 2009. *PageID* 58-73. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on February 25, 2011. *PageID* 48-52.

Plaintiff was 32 years of age at the time the administrative law judge issued her decision. She has a high school education, having been enrolled in special education classes. *PageID* 211. Plaintiff has past relevant work experience as an egg inspector, short order cook, handicap aide, assembly line worker, pizza cook, fast food worker and trimmer. *PageID* 207, 214-21.

## II.

### The Evidence of Record

Plaintiff alleges, and the administrative law judge found, that plaintiff suffers both physical and mental impairments. However, plaintiff challenges only the Commissioner's finding that plaintiff's mental impairments are not disabling. The Court will therefore address only that contention.

Plaintiff testified at the administrative hearing that her worst problems are emotional and mental. *PageID* 94. Plaintiff testified to anger issues and believed that this problem had worsened over the prior four years. *PageID* 95. Plaintiff would "fly off of the handle real easy, I threaten to beat people up, I bottle stuff up inside, I don't talk about it." *Id.* She reported that, two years prior to the hearing, she beat up her aunt. *Id.* She also reporting fights with her sister. *PageID* 96. Plaintiff complained of crying spells "all the time," about three or four times a week.

*PageID* 96-97. Mental health treatment at Six County, Inc., helped "some." *PageID* 97. She is always tired. *Id.*

As to her daily activities, plaintiff can feed, dress and bathe herself. *PageID* 105. She shares cooking duties with her husband. *Id.* She washes dishes perhaps twice a week but does no laundry, ironing, sweeping, mopping or vacuuming. *PageID* 106. She cares for two dogs. *PageID* 107. She enjoys crossword puzzles but sometimes loses concentration. *PageID* 109. She watches about two hours of television a day. *PageID* 110. She does not go out where there are too many people. *PageID* 109-10. A friend visits once or twice a week and her sister visits once a month. *PageID* 110-11.

When initially evaluated at Six County, Inc., in May 2007, plaintiff reported intermittent mood difficulty for the prior 6 or 7 months. *PageID* 312-23. She expressed unhappiness with having to live with her parents. *PageID* 312. She performed all the housework. *PageID* 312-13. She also liked to crochet, listen to music and play video games. *PageID* 313. Kathleen Davison, the intake counselor, noted a normal mental status examination, including normal speech, absence of aggressive or abnormal thought content, no hallucinations or perceptual abnormalities, logical and concrete thought process, euthymic mood, full affect, cooperative behavior, and fair insight and judgment. *PageID* 323. Plaintiff was diagnosed with an adjustment disorder, rule out mood disorder, and a learning disorder. Plaintiff's Global Assessment of Functioning (GAF) was rated 65, which is indicative of only mild dysfunction. *PageID* 321.I

Charles W. Loomis, M.A., performed a consultative evaluation of plaintiff on September 17, 2007. *PageID* 324-29. According to Mr. Loomis, testing indicated borderline intellectual functioning. Plaintiff read at the fourth grade level. Clinical examination was suggestive of an anger disorder and conflict in interpersonal relationships. *PageID* 326. Plaintiff reported that

3

her daily consisted of housework, watching television, crocheting and listening to music. *PageID* 327. Mr. Loomis diagnosed an oppositional defiant disorder and borderline intellectual functioning. He assigned a GAF of 60, which is suggestive of moderate dysfunction. *PageID* 328-29. According to Mr. Loomis, plaintiff would not be significantly impaired in her abilities to understand, remember and follow routine instructions and in maintaining attention and concentration. PageID 329. Plaintiff would be moderately impaired in her ability to cope with the ordinary stresses and pressures of competitive work and in relating to others, including fellow workers, supervisors and the general public. *Id.*

A state agency psychologist, Mel Zwissler, Ph.D., reviewed the file in October 2, 2007 and concluded that plaintiff retained the ability to complete at least simple repetitive tasks in a low stress work environment, and that she would work best in a setting with few social interactions. *PageID* 346.

Plaintiff returned to Six County, Inc., in December 2007. *PageID* 349-50. Plaintiff reported that she and her husband were no longer living with her parents, which reduced her stress levels. *PageID* 349. She was tired all the time. On mental status examination, social worker Elise McMath, LISW, noted a distressed mood and restricted affect but normal speech and thought, normal mental content with no reported delusions or hallucinations, good insight and judgment and normal memory. Concentration "seems ok." *PageID* 350. Plaintiff admitted to being mean and hateful much of the time. She also described an irritability toward others and a propensity to be easily agitated in social situations. Ms. McMath assessed an adjustment disorder and again assigned a GAF score of 65. *Id.* However, Ms. McMath also indicated in a form for the county Job and Family Services Department that plaintiff's "psychological propensities" would be work preclusive. *PageID* 351-52.

4

Plaintiff began counseling sessions with Susan Dorsky, a social worker at Six County Inc., on August 5, 2008. *PageID* 365-68. Plaintiff underwent a mental status examination and an individualized service plan was developed. *Id.* Progress notes from October and December 2008 indicate that plaintiff was a danger to no one and that she and her husband got along pretty well. *PageID* 369-71. Ms. Dorsky noted that plaintiff sometimes took things too personally. *Id.*

Wheaton Wood, M.D., a psychiatrist at Six County, Inc., began treatment of plaintiff on November 7, 2008. Plaintiff reported rejection sensitivity since childhood, increasing symptoms of disproportionate anger, non-psychotic paranoia, rejection sensitivity, affective lability and anger, hatefulness, irritability and physical aggression since 2005, following a series of deaths in her family. Dr. Wood surmised that plaintiff became depressed at that time and then vacillated between a hypomania and depression ever since; underlying borderline symptoms have always been present. *PageID* 418. Dr. Wood characterized plaintiff as an above average, intelligent patient with a borderline personality disorder who had developed bipolar disorder in the prior three years. *PageID* 419. A psychiatric/pharmacological management plan was established. *PageID* 365.

In December 2008, plaintiff reported to Dr. Wood that she was "doing okay" but was "irritable from time to time." Her mood was euthymic and her affect remained labile. She was not suicidal or homicidal; she reported no hallucinations or delusions. Dr. Wood modified her medication because of reported side effects. *PageID* 415.

On February 13, 2009, plaintiff experienced an outburst of anger, including tears and cursing, toward Dr. Wood's staff. *PageID* 432. Dr. Wood described plaintiff as "seeking disability" with "the usual confused lifestyle but this is a case of borderline

5

that is really tough to keep under wraps." *Id.* According to Dr. Wood, plaintiff was "completely disabled," "explosive, paranoid."

> Frankly, she is, at times, quite dangerous. She infers meanings that are not there from those around her. Imagining her in a work place, I see her lasting about ½ day before she would get into an entanglement based on an erroneous perception emotionally and an aggressive reaction.

*Id.* Dr. Wood described plaintiff's mental status as follows:

> Mood is angry. Affect is labile. Self-control is minimal. She is explosive, upset, paranoid and has out of proportion rage. She was able to be worked with by sophisticated techniques of introspection not by CBT. This is not something that the work place is going to be able to provide. I have done my best with medicine but I am afraid this is not a good prognosis.

*PageID* 433. In a letter to plaintiff's attorney, Dr. Wood characterized plaintiff as explosive and paranoid; she interpreted other people's looks in a malevolent way, and acted on those malevolent misinterpretations. *PageID* 422. According to Dr. Wood, plaintiff's prognosis was poor; he characterized her as "barely able to survive because of her extremely paranoid type of borderline personality." *Id.*

Dr. Wood completed a mental residual functional capacity assessment on that same day, opining that plaintiff is extremely limited in her ability to relate to the general public and maintain socially appropriate behavior, to work in cooperation with or in proximity to others without being distracted by them and to behave predictably, reliably and in an emotionally stable manner. Plaintiff is markedly limited in her ability to accept instructions from or respond appropriately to criticism from supervisors or superiors, to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes, to

respond appropriately to co-workers or peers, and to process subjective information accurately and to use appropriate judgment. According to Dr. Wood, plaintiff's condition would likely deteriorate if she were placed under stress, particularly that of a job. *PageID* 423-25. He concluded that plaintiff suffered from a serious borderline personality disorder with paranoia that would cause "aggressive acting out." *PageID* 425.

Following a March 2009 a therapy session with plaintiff and her husband, Ms. Dorsky reported that "client did not get over her mistrust and/or hostility toward therapist despite therapist's attempting to address the strong trust that has been established to now. [T]he fear of losing control of her husband was intense and way out of proportion to situation." *PageID* 431.

In May 2009, Dr. Wood noted that plaintiff was neither suicidal nor homicidal, but that she experienced panic attacks triggered by her fear of her husband's suicide attempt. Her mood was euthymic, her affect was congruent and her perception was normal. Dr. Wood described "a complex[,] basically factitious anxiety disorder" and noted that "Factitious Disorders have a very poor prognosis." Dr. Wood's diagnosis changed to a conversion disorder on borderline personality disorder. *PageID* 428-29.

Ms. Dorsky again treated plaintiff and her husband on July 15, 2009. The couple denied major problems but reported chronic stressors related to health, poverty and insufficient stimulation. They discussed their concerns and plans for dealing with increased stress. *PageID* 427.

The record also includes notes relating to plaintiff's medical treatment. To the extent that those records refer to plaintiff's mental status, the records include such observations as normal affect, "cheerful" demeanor and calm mood. *See, e.g., PageID* 380, 411, 436.

7

At the administrative hearing, Dr. Olsheski was asked to assume a claimant with plaintiff's vocation profile and the residual functional capacity for medium exertion with only occasional bending and squatting, limited to only low-stress work, which was defined as non-fast-paced, simple, repetitive, non-public tasks with little social interaction. *PageID* 119. In response, the vocational expert testified that such a clamant could perform certain of plaintiff's prior relevant work, *i.e.*, egg inspector, assembly line worker and trimmer. *PageID* 121-22. If one were to credit the opinions articulated by treating psychiatrist Dr. Wood, however, plaintiff would be unemployable. *PageID* 123.

### III.
### Administrative Decision

In her decision, the administrative law judge found that plaintiff suffers the severe mental impairments of an affective disorder, borderline intellectual functioning and a personality disorder. *PageID* 60. Plaintiff's impairments neither meet nor equal a listed impairment. *PageID* 62. From a mental standpoint, the administrative law judge found that plaintiff is limited to low stress work, defined as non-fast paced, simple, repetitive, non-public tasks with little social interaction. *PageID* 66. In making this finding, the administrative law judge gave "little weight" to Dr. Wood's opinion of disability:

> The opinions of Wheaton B. Wood, M.D., have been considered, but are given little weight. These opinions are not supported by the evidence of record and appear to be inconsistent with and unsupported by other evidence in the record. For example, Dr. Wood opined that the claimant is markedly socially impaired, but the claimant is described elsewhere in the record as being pleasant, cheerful, having a normal mood and attitude and calm, to name a few. Dr. Wood's opinions appear to be based primarily on the claimant's

8

> subjective complaints. Additionally, with the exception of one note about the claimant exhibiting inappropriate behavior, there is no indication in the record that the claimant was not cooperative or socially appropriate with her treating sources.

*PageID* 68 (citations to record omitted). Instead, the administrative law judge relied on and gave "significant weight" to the opinions of the state agency psychologists the consultative examiner, Mr. Loomis, finding that those opinions were consistent with and well supported by the evidence of the record as a whole. *PageID* 67-68. The administrative law judge found that plaintiff's testimony and subjective complaints of disabling mental impairments were not fully credible:

> The claimant has not required any inpatient hospitalization or emergency room care for mental complaints. Further, while the claimant endorsed fighting with people and beating someone up, the record is devoid of any objective documentation of the same, and she has never been convicted of an assault or other criminal charge. Further, quite inconsistent with her allegations at the hearing, in June 2009 the claimant told a treating physician that she is disabled because of COPD and diabetes, and did not mention her mental condition as a contributing cause to her disability. Moreover, in July 2009, the claimant denied any major problems to her social worker.

*PageID* 69 (citations to record omitted).

Relying on the vocational expert's testimony, the administrative law judge found that plaintiff was capable of performing some of her past relevant work despite her impairments. *PageID* 72. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act at any time from her alleged onset date of December 20, 2005

9

through March 31, 2009, *i.e.,* the date she was last insured. *PageID* 73.

**V.**

**DISCUSSION**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

In her *Statement of Errors*, plaintiff contends that the administrative law judge erred in rejecting the opinions of plaintiff's treating psychiatrist, Dr. Wood. Doc. No. 15. Plaintiff also contends that the administrative law judge's adoption of the opinions of the non-examining state agency

psychologists, and rejection of those of Dr. Wood violated SSR 96-6p. *Id.*

As a general rule, an administrative law judge must give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because the former are "'most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). Thus, an administrative law judge must give controlling weight to a treating source if she finds the opinion well-supported by medically acceptable data and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). If, on the other hand, the administrative law judge concludes that the treating physician's opinion is not entitled to *controlling* weight, the administrative law judge must nevertheless apply the factors listed in 20 C.F.R. § 404.1527(d)(2) – *i.e.*, length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole and the specialization of the treating source – in determining what weight to give the opinion. *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009). In weighing these factors, there is a presumption that the treating physician's opinion is entitled to "great deference." *See id. See also* SSR 96-2p, 1996 SSR LEXIS 9, at *9-10 ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight").

11

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the administrative law judge to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406 (citing 20 C.F.R. § 404.1527(d)(2)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 406-07 (citing SSR 96-2p, 1996 SSR LEXIS 9, at *12).

In the case presently before the Court, the administrative law judge correctly set forth the standards applicable to the evaluation of a treating physician's opinion, *PageID* 67, but found that Dr. Wood's opinions were "inconsistent with and unsupported by other evidence in the record." *PageID* 68; *see* 20 C.F.R. 404.1527(d)(2). The administrative law judge went on to consider the weight to be accorded to Dr. Wood's opinion, and concluded that those opinions were entitled to "little weight." *PageID* 68. By way of example, the administrative law judge noted that, although Dr. Wood opined that plaintiff is markedly socially impaired, "claimant is described elsewhere in the record as being pleasant, cheerful, having a normal mood and attitude and calm . . . ." *Id.* "[W]ith the exception of one note about the claimant exhibiting inappropriate behavior, there is no indication in the record that the claimant was not cooperative or socially appropriate with her treating sources." *Id.* The administrative law judge also found that Dr. Wood's opinions were based "primarily on the clamant's subjective complaints," *id.*, which, as noted, the administrative law judge found were not fully credible.

It is true that Ms. McMath, a license social worker, also characterized plaintiff's mental impairments as work preclusive,

12

*PageID* 351-52, but, as the administrative law judge noted, that opinion was entirely inconsistent with Ms. McMath's GAF score of 65, *PageID* 350, which is indicative of only mild dysfunction.

In short, the Court concludes that the decision of the administrative law judge applied all appropriate standards and enjoys substantial support in the record.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

*s/Norah McCann King*
Norah McCann King
United States Magistrate Judge

July 5, 2012